MINER, Judge.
In this personal injury action, appellant, Willis Holder[1], appeals from a summary final judgment entered in favor of appellee Phillips and Jordan, Inc. finding that Holder was precluded, as a matter of law, from bringing a tort action against appellee because he had claimed and accepted workers’ compensation benefits, thereby electing his remedy for in *1060 juries received while in the employ of Phillips and Jordan. Because we find that disputed material facts exist which make summary judgment in favor of appellee inappropriate, we reverse and remand for further consistent proceedings.
The operative facts which gave rise to the controversy at bar may be summarized as follows. Willis Holder and Rufus Waldrop were employed by Phillips and Jordan, Inc., a heavy construction company specializing in excavation projects throughout the United States. Included among Phillips and Jordan projects at the time in question was one for Anheuser-Busch in the Jacksonville area. Waldrop was a superintendent or foreman on the job and Holder was a heavy equipment operator with a fifth grade education. The two men, life-long acquaintances, and another employee shared a trailer in the vicinity of the jobsite.
Three or four days prior to October 16, 1985, Rufus Waldrop, with permission, drove a company-owned pickup truck to Robbins-ville, North Carolina, his home, to attend to personal business. Willis Holder took some unpaid leave to accompany Waldrop to North Carolina to visit his family who also lived in the Robbinsville area. On October 15, 1985, Waldrop called Mr. Benjamin Turner, manager of the Florida Division of Phillips and Jordan, to advise that he and Holder were returning to Florida on the following day and would be back on the job on October 17.
Early in the morning of October 16, Wal-drop and Holder left Robbinsville to return to Jacksonville. Around 9:00 a.m., they stopped for breakfast in North Georgia. After breakfast, according to Holder, they bought a six-pack of beer which they shared on the ride south. Holder also testified that at some point further along the way, they bought another six-pack of beer which they split.[2]
Waldrop and Holder arrived back in the vicinity of Jacksonville near the jobsite on the late afternoon of October 16. Instead of going straight to the trailer they shared, Waldrop decided to go by the jobsite, ostensibly to check on some water pumps. Holder testified he did not want to go to the jobsite but that Waldrop insisted. They arrived at the site to find no one there.[3] Holder testified that he stayed in the truck while Wal-drop spent a “couple of minutes” checking water pumps. After that, the two of them stood around the truck drinking beer for the better part of an hour. As they left the jobsite in the company-owned pickup, Wal-drop, the driver, pulled out onto the highway into the path of a loaded semi-trailer tractor, a collision occurred and he and Holder were seriously injured.[4]
Within a day or two after the accident, Phillips and Jordan reported Holder’s injury to the Division of Workers’ Compensation and, on Holder’s behalf, filed a claim for medical benefits with USF <& G, its workers’ compensation insurance carrier. Additionally, to Holder’s surprise, he received payment for three hours work on the day of the accident. According to Phillips and Jordan, pursuant to company policy, Holder was paid two hours wages for showing up at the job-site and for an additional hour for the time he and Waldrop spent at the site. When Holder questioned Mr. Price, a company official, about why he was being paid when he did not work, he was told not to concern himself about the payment.
After recovering from his injuries, Holder went back to less demanding work on a crew whose duties involved controlled burning of jobsite trash and underbrush. When he tried to go back to his prior job operating a bulldozer, he found he could not perform his duties. Thereafter, Phillips and Jordan and USF & G prepared and sent to him, for his signature, twenty-five requests for wage loss benefits and twenty-four certification forms with instructions to sign and return such forms if he wanted to receive wage loss benefits. Because he had no other source of *1061 income, he did as instructed and, all told, received over $43,000 in wage loss benefits.
In 1988, Holder hired an attorney to advise him of his rights regarding the accident and his attorney advised the employer and carrier not to provide any more workers’ compensation benefits as he intended to file a tort action against Phillips and Jordan and others on Holder’s behalf.
In due course, suit was filed and after discovery was completed, Phillips and Jordan filed a motion for summary judgment claiming that because Holder had elected to claim benefits under Chapter 440, it was statutorily immune from suit and contending that Holder had elected workers’ compensation as his remedy and thus was estopped from obtaining a recovery in tort. At the summary judgment hearing, counsel for appellee initially agreed with the trial court that the issue to be resolved was whether Holder was injured in the course and scope of his employment. Later, during argument, counsel changed tack and ultimately persuaded the trial court that it need not reach the question of whether Holder’s injuries were work related because he had sought workers’ compensation benefits, thereby acknowledging that his injuries occurred in the course and scope of his employment. Consequently, argued appellee, it was statutorily immune from a common law tort claim.
The thrust of appellee’s argument on appeal is that the several wage loss benefit requests submitted to USF & G by appellant at the direction of Phillips and Jordan were “claims,” in part because there appears on the face of each request and certification form the word “claim.” We find this argument unavailing. While “claim” is not defined in section 440.02, the Definitions section of the statute, that term is adequately defined in section 440.19(l)(e)l which provides that a “claim” shall: (1) be filed with the Division; (2) contain names and addresses of the employer and employee; (3) contain a statement of the time, date, place, nature and cause of the injury; and (4) contain specific details of the benefits alleged to be due. Section 440.25(1) provides that a claim is to be filed with the Division “at any time after a notice to controvert is filed by the employer or carrier or at any time after a specific benefit becomes due and is not provided.” See Ridge Pallets, Inc. v. John, 406 So.2d 1292 (Fla. 1st DCA 1981). Rule 4.050, Fla.R.Work.Comp.P. also states that a claim “shall be filed with the Division.” Rule 38F-3.010, F.A.C. provides that a claim “shall be filed with the Division on L.E.S. Form D.W.C.-16 ... or its equivalent.”
It is undisputed that Holder never filed a § 440.19(1) claim invoking jurisdiction of the Division of Workers’ Compensation because the benefits he received were paid to him voluntarily. Had he done so, the Division would have had “the primary responsibility and jurisdiction to determine the issue of compensability.” 2A Arthur Larson, The Law of Workmen’s Compensation, § 67.33, pp. 12-148, 149 (1994) (footnotes omitted). Thus, we find that the wage loss forms involved in the case at bar do not constitute “claims” in the formal sense even though they were denominated on the forms as such. Moreover, we also find that these forms do not constitute claims in the practical sense for the purpose of determining whether an employee has affirmatively asserted his or her entitlement to Chapter 440 benefits. Unlike a formal claim which necessarily signals a Chapter 440 contest between the employer and employee, we are of the view that the mere signing of wage loss and certification forms at the direction of the employer/carrier is entirely consistent with the employee’s passive acceptance of benefits. Thus, a claimant in the formal sense may properly be denied a tort remedy whereas an individual in Holder’s circumstances should not be so precluded, assuming, of course, that such person did not otherwise engage in a course of conduct which would amount to an election of a workers’ compensation remedy or would estop him or her from seeking a tort remedy.
On this record, we do not find that Holder did other than rely on Phillips and Jordan’s representation to its workers’ compensation carrier that he was entitled to Chapter 440 benefits and accept such benefits.[5] Otherwise stated, benefits were paid to Holder on the basis of facts supplied to USF & G by *1062 Phillips and Jordan. In such circumstances, the elements of estoppel are not satisfied. See, Wright v. Douglas N. Higgins, Inc., 617 So.2d 460 (Fla. 3d DCA), rev. denied, 626 So.2d 204 (Fla.1993); Lowry v. Logan, 650 So.2d 653 (Fla. 1st DCA 1995).
 Because there remains a disputed issue of material fact whether appellant was injured within the course and scope of his employment, the summary judgment granted below must be reversed. As established by prior ease law, the carrier is entitled to a set off against any recovery that Holder may realize in order to compensate the carrier for benefits paid. Alvarado v. Manro, Inc., 550 So.2d 1174 (Fla. 3d DCA 1989); Velez v. Oxford Development Co., 457 So.2d 1388, 1390 (Fla. 3d DCA 1984), pet. rev. denied, 467 So.2d 1000 (Fla.1985).
REVERSED and REMANDED.
BOOTH, J., concurs.
KAHN, J., concurs with opinion.

. In the record on appeal, appellant is referred to as both Wilh's and Wilks Holder.

.The evidence regarding the amount of beer, if any, consumed by the two men during the trip back to Florida is in dispute. Waldrop testified that he did not drink any beer until shortly before he and Holder arrived in the Jacksonville area.

. Apparently no work went on that day due to a heavy downpour.

. Later testing showed that Waldrop had blood alcohol level of .22 at the time of the accident.

. Although the record, as it appears at this early stage of the proceedings, suggests that the appcl- *1062 lant did nothing more than passively accept workers' compensation benefits, we do not preclude the appellee from adducing further proof upon which the trial court could ultimately find that appellant is estopped from obtaining a tort remedy.